================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 161
The People &c.,
          Respondent,
        v.
William O'Daniel,
          Appellant.

          Bruce R. Bryan, for appellant.
          Jaime A. Douthat, for respondent.

PIGOTT, J.:

          Defendant, facing two counts of rape in the first

degree, one count of attempted rape in the first degree, two

counts of sexual abuse in the first degree, and two counts of

endangering the welfare of a child, retained attorney Martineau

to represent him.  Martineau was suffering at the time from a

- 1 -

debilitating medical condition.  On March 1, 2010, Martineau
requested an adjournment of defendant's trial, scheduled to begin
the following week in County Court, due to a "flare-up" of his
medical condition.  The request was granted.

On April 28, 2010, following a hospitalization,
Martineau requested another adjournment on medical grounds, but
also mentioned that if adjournment were problematic for County
Court then he would "advise [his] client and assist him in
attempting to obtain substitute counsel in an effort to move this
matter along."  The trial was rescheduled to August 16, and
finally, after the People sought an adjournment, to October 12,
2010.

In the fall of 2010, Martineau's health was again poor.
At the suggestion of County Court, Martineau identified a "second
chair" who would take over if his health worsened: attorney
Bruno, who had represented defendant at his arraignment.
Martineau took a turn for the worse and defendant's file was
delivered to Bruno's office on September 30.  Bruno met with
defendant the following day.

On October 5, 2010, a week before trial was due to
start, attorney Bruno represented defendant at a conference in
County Court.  On behalf of defendant, Bruno moved to adjourn the
trial date, mentioning that defendant believed "that the legal
system . . . [was] being unfair to him because of Mr. Martineau's
health."  However, Bruno also informed the court that he had

"reviewed [defendant's] entire file" and was "confident" that, should the motion be denied, he would "be prepared and ready to go forward to trial" the following week. Bruno added that he had explained to defendant that County Court had an "obligation to move matters along in a timely fashion." The People opposed the adjournment motion, and County Court denied it.

On October 12, 2010, the day trial was to begin, Bruno "renew[ed] the motion to adjourn the trial," on behalf of defendant, stating that defendant "from his perspective, is of the opinion that we need more time to prepare for the trial." Again, the People opposed the motion, and County Court denied it, noting that Bruno had not indicated "that he is unable to proceed directly" or "that he is in need of extra time with regard to a specific need to prepare in some specific way." Jury selection began, and the trial followed.

The jury found defendant guilty of all charges. Defendant moved to set aside the verdict under CPL 330.30. Bruno and Martineau filed affidavits stating that the latter had been unable to assist with the trial; that Bruno had first reviewed defendant's file 12 days before the trial began; and that until a few days before trial defendant expected Martineau to be his trial attorney. Defendant contended that County Court's denial of the October motions for adjournment violated his right to the retained attorney of his choice. County Court denied the CPL 330.30 motion and in March 2011, with the now-recovered Martineau

serving as defendant's counsel, imposed sentence.

Defendant appealed, raising several challenges, principally that County Court violated his right to choice of counsel. Defendant contends that County Court did so when it denied the October adjournment requests without making any inquiry into defendant's choice of counsel.

The Appellate Division affirmed County Court's judgment, observing with respect to defendant's primary argument that the record contained no "indication that defendant was unwilling to proceed to trial with Bruno as counsel or, more to the point, that he sought further adjournment of the trial date for the express purpose of retaining another attorney. Rather, defendant . . . instructed Bruno to seek two further adjournments in order to give Bruno more time to prepare. Bruno, however, voiced no concerns as to his readiness to proceed. To the contrary, Bruno indicated . . . that he had reviewed defendant's 'entire file,' met with defendant 'quite frequently' and was 'confident' that, if the trial proceeded as scheduled, he would be 'prepared and ready to go forward'" (105 AD3d 1144, 1146-1147 [3d Dept 2013]).

A Judge of this Court granted defendant leave to appeal. We now affirm.

A defendant who does not require appointed counsel has a right under both Federal and State constitutions to choose who will represent him (see United States v Gonzalez-Lopez, 548 US

140, 144 [2006]; <u>People v Arroyave</u>, 49 NY2d 264, 270 [1980]).
"The constitutional guarantee to be represented by counsel of
one's own choosing is a fundamental right" (<u>Arroyave</u>, 49 NY2d at
273).  Nevertheless, "the right to counsel of choice is
qualified, and may cede, under certain circumstances, to concerns
of the efficient administration of the criminal justice system"
(<u>People v Griffin</u>, 20 NY3d 626, 630 [2013]).

In particular, we have held that a defendant may not
use the right to counsel of choice "as a means to delay judicial
proceedings.  The efficient administration of the criminal
justice system is a critical concern to society as a whole, and
unnecessary adjournments for the purpose of permitting a
defendant to retain different counsel will disrupt court dockets,
interfere with the right of other criminal defendants to a speedy
trial, and inconvenience witnesses, jurors and opposing counsel"
(<u>Arroyave</u>, 49 NY2d at 271).  In short, appellate courts must
recognize "a trial court's wide latitude in balancing the right
to counsel of choice against the needs of fairness and against
the demands of its calendar" (<u>Gonzalez-Lopez</u>, 548 US at 152
[citations omitted]).

Significantly, in the present case, defendant does not
contend that he expressly requested new counsel on October 5 or
October 12, 2010 and that the request was wrongly denied.
Rather, defendant's principal argument is that when he moved,
through counsel, for adjournment, County Court was obliged to

inquire of him whether he was in fact seeking new counsel.  We disagree.

When newly retained defense counsel requests an adjournment of trial and states that defendant believes that the trial would otherwise be unfair, the better practice would be to inquire of counsel and, if necessary, defendant as to whether defendant seeks an adjournment so that he may have the opportunity to retain new counsel or so that his counsel may become better prepared for trial.  However, in this case, County Court did not violate any of defendant's constitutional rights by denying the adjournment motions without that inquiry.  On the record before us on direct appeal, when the colloquies of October 5 and October 12 are considered together, no communication was made to County Court from which it would appear that defendant was asking for the opportunity to retain new counsel, or for an adjournment in the hope that Martineau would recover quickly enough to become his trial counsel.  Rather, defendant simply sought an adjournment to give Bruno more time to prepare.  Under these circumstances, there was no obligation on the part of County Court to inquire as to whether defendant was seeking new counsel.

Defendant's remaining contentions lack merit.

Accordingly, the order of the Appellate Division should be affirmed.

People v William O'Daniel

No. 161

LIPPMAN, Chief Judge (dissenting):

There is no dispute that the Sixth Amendment right to counsel entails the right of a criminal defendant to be represented by the attorney he or she has retained (see United States v Gonzalez-Lopez, 548 US 140, 144 [2006]). Nor, after Gonzalez-Lopez, is it debatable that the wrongful refusal of a court to honor a defendant's prerogative to retain his or her lawyer is per se reversible, error of this description having been deemed structural for its potential to subvert the very framework of a criminal proceeding in ways resistant to harmless error analysis (id. at 150). But here, on facts establishing that defendant was, without compelling justification, forced to proceed to trial with an attorney other than the one he had retained, the majority denies relief.

Mr. Martineau was defendant's attorney of record and Mr. Bruno, who stood in for him at defendant's trial, was never substituted for Martineau, or even retained as cocounsel by defendant. All concerned, most notably the trial court, which had itself set in motion the sequence leading to Mr. Bruno's

- 1 -

assumption of the role of trial counsel,[1] knew that Mr. Bruno was not appearing at defendant's behest but at the request of Mr. Martineau to accommodate the trial court's concern with meeting "Standards and Goals."

Even if defendant's October 5th adjournment request had been ambiguous as to whether it involved an assertion of his right to retain his own lawyer, his subsequent request for a trial postponement, made just one week later, immediately before the commencement of the trial, could have left no doubt that defendant was invoking his right to be represented by an attorney of his choosing. At that time, Bruno, at defendant's insistence, requested a stay, urging that one was mandatory pursuant to CPLR 321 (c), which, in substance, requires a 30-day stay of proceedings against a party whose attorney becomes disabled to permit that party to retain other counsel. After reading verbatim the relevant portion of the statute,[2] Bruno reiterated

---

[1] Mr. Bruno's introduction to the matter was in response to the trial judge's suggestion to attorney Martineau that, in view of his still tenuous health as of September 2010, he "seek out a second chair." The suggestion, the court explained, was made "purely [as] a matter of fairness and Standards and Goals."

[2] The relied upon statute stipulates that

> "If an attorney dies, becomes physically or mentally incapcitated, or is removed, suspended or otherwise becomes disabled at any time before judgment, no further proceeding shall be taken in the action against the party for whom he appeared, without leave of the court, until thirty days

that Mr. Martineau, whom all concerned understood to be disabled, "is retained counsel by Mr. O'Daniel."

Defendant makes a plausible argument that CPLR 321 is applicable in criminal proceedings[3] and that the trial court was therefore obliged, in light of Mr. Martineau's disability, to stay the proceedings so that he could retain new counsel. But even if CPLR 321 is not applicable in criminal matters, the salient point is that defendant's reliance upon it should have placed the court on unequivocal notice that defendant was asking for an opportunity to decide for himself who would represent him at trial. To the extent that he was reasonably able to do so through a reluctant interlocutor not of his choosing whom he may very well have elected not to retain,[4] defendant had asserted his fundamental right to select his own lawyer, and the court was

---

after notice to appoint another attorney has been served upon that party either personally or in such manner as the court directs" (CPLR 321 [c]).

[3] Defendant points out that article I, section 6 of the State Constitution provides that "In any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions" (emphasis added). The argument is thus made that if a stay is required in civil actions to allow representation by counsel -- which is to say by chosen counsel -- when a defendant's attorney becomes disabled, the same rule must be applicable in criminal proceedings.

[4] Defendant it appears had previously been represented by Mr. Bruno in a Family Court matter. It is thus likely that his decision to hire Mr. Martineau in this very serious criminal matter reflected a considered preference for his representational skill set over that of Mr. Bruno.

bound to honor that right unless there was some compelling reason not to (see People v Griffin, 20 NY3d 626, 630 [2013]; People v Knowles, 88 NY2d 763, 769 [1996]).

The closest the court came to identifying such a reason was when it noted that the case had been pending a long time and that fairness required a trial without further delay.  But the lengthy pendency of the prosecution was attributable to adjournments requested by both sides and there was, in the context of a postponement request by defendant, no apparent urgency to try the matter, which was based on relatively recent allegations of misconduct said to have taken place years before. We have, of course, observed that a defendant's right to choose his attorney "is qualified in the sense that a defendant may not employ such right as a means to delay judicial proceedings" (People v Arroyave, 49 NY2d 264, 271 [1980]), but here it is clear that defendant's request for a stay expressly to enable the exercise of his right to choose his lawyer, was not a dilatory tactic.  The serious deterioration in attorney Martineau's condition barely two weeks prior to the October 12, 2010 trial date was not a circumstance over which defendant had any control and there is no record support for the suggestion that, in requesting an additional postponement of the trial just days after learning that Mr. Martineau would be unable to appear for him if the trial commenced on October 12th, defendant was engaging in an eleventh hour manipulation to prolong his period

of release on bail.  The court was not obliged to put off the trial indefinitely, but it was required, given the fundamental, indeed structural right implicated, at least to inquire whether Mr. Martineau could be expected to recover and try the case within a reasonable time[5] and, if that did not seem likely, to afford defendant a reasonable opportunity himself to retain substitute counsel.  I do not believe that forcing defendant forthwith to trial with a lawyer he had not retained was a constitutionally permissible alternative.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Judge Pigott.  Judges Graffeo, Read, Smith, Rivera and Abdus-Salaam concur.  Chief Judge Lippman dissents in an opinion.


Decided October 21, 2014

---

[5] It appears that Martineau recuperated sufficiently to resume his professional responsibilities by December 2010, and, in fact was present at defendant's sentencing in March 2011 at which time he thanked Bruno for standing in for him "on very short notice."

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed.  Opinion by Judge Pigott.  Judges Graffeo, Read, Smith, Rivera and Abdus-Salaam concur.  Chief Judge Lippman dissents in an opinion.


Decided October 21, 2014